IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL W. MOONEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-185-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Michael W. Mooney requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and that asserts the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on August 14, 1960, and was forty-eight years old at the time of the administrative hearing (Tr. 599). He has a high school education, served in the National Guard from March 1985 through March 1993 (Tr. 110) and has past relevant work as a road grader, sign installer, delivery driver, and building maintenance worker (Tr. 28). The claimant alleges that he has been unable to work since February 15, 2002 because of severe depression, anxiety, neuropathy, asthma, and arthritis (Tr. 129-30).

### Procedural History

The claimant first applied on October 25, 2005 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Gene M. Kelly determined that the claimant was not disabled in a written opinion dated February 13, 2008. The Appeals Council granted review and remanded the case to the ALJ with specific instructions: (i) to further consider and properly analyze the opinion evidence of record; (ii) to further consider and explain the claimant's maximum residual functional capacity ("RFC"); (iii) to obtain evidence from a vocational expert once the maximum RFC was established; and (iv) to address the Adult Function Report submitted by the claimant's mother. Upon remand, the ALJ again

determined that the claimant was not disabled in a written decision dated July 21, 2009 (Tr. 18-30).  This time the Appeals Council denied review, so the ALJ's July 21, 2009 opinion is the final decision of the Commissioner for purposes of appeal.  *See* 20 C.F.R. §§ 404.981 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had severe impairments (neuropathy, shortness of breath, hypertension, stomach problems, headaches, legs, vision, shoulder, hearing, hip, back, knees, diabetes mellitus, depression, anxiety, organic mental disorder, and substance abuse) but retained the RFC to perform a limited range of light work, *i. e.*, he could lift/carry up to twenty pounds, and stand/walk up to six hours in an eight-hour day at one hour intervals; he was slightly limited in his ability to bend, stoop, and squat, but could occasionally climb, crouch, crawl, kneel and twist his torso; he should avoid dust, fumes, and gases, activities which require fine vision, rough uneven surfaces, unprotected heights and fast, dangerous machinery and needed easy accessibility to restrooms; and, he was slightly limited in his ability have contact with the general public, co-workers, and supervisors (Tr. 22).  The ALJ found that although the claimant could not return to any past relevant work, he was nevertheless not disabled because there were other jobs he could perform in the national economy, *i. e.*, laundry classifier, officer helper (unskilled, light exertion), and addresser (unskilled, sedentary exertion) (Tr. 29).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the opinion evidence regarding his mental health limitations; and (ii) by failing to properly analyze the third party function report submitted by his mother.  The undersigned finds that the ALJ did fail to properly analyze the opinion evidence of record.

Dr. Donna Noland, Ph.D. performed a consultative examination of claimant on November 17, 2005 at the request of the Social Security Administration.  During the course of the evaluation, Dr. Noland noted that the claimant's problems began after the failure of claimant's fourth marriage, did not want to go out to see anyone socially, and experienced "problems with losing his thoughts in the middle of a sentence and depression" (Tr. 200).  The claimant reported living at home with his parents and that his family and two male friends were his source of social support (Tr. 201).  Dr. Noland administered a Mental Status Exam, the Wechsler Adult Intelligence Scale – Third Edition (WAIS-III) and conducted a review of the medical records to render an opinion regarding the severity of claimant's mental health impairments (Tr. 200).  Dr. Noland ultimately concluded that claimant's IQ was average, he showed "significant limitations in work and health," and he showed an adequate ability to understand, remember and carry out instructions (Tr. 204).  Further, Dr. Noland noted her diagnostic impression that claimant suffered from major depression which was recurrent, severe, but without psychotic features, social anxiety disorder, and she assigned to claimant a GAF score of

43 (Tr. 205). Finally, Dr. Noland wrote that claimant's "[p]hysical problems and emotional issues will interfere with his ability to keep employment." (Tr. 206).

State reviewing physician Dr. Burnard Pearce, Ph.D. completed a Psychiatric Review Technique on January 4, 2006, in which he found that claimant suffered from affective disorders, *i. e.*, depression, and anxiety (Tr. 214, 217, 219). Dr. Pearce further found that claimant was mildly limited in his activities of daily living but moderately limited in his ability to maintain social functioning and maintain concentration, persistence, and pace (Tr. 224). He also completed a Mental RFC Assessment in which he found that claimant would be markedly limited in his ability to understand and remember detailed instructions, his ability to carry out detailed instructions, and his ability to interact appropriately with the general public (Tr. 227-28).

Claimant's treating source, Keith Keplinger, M.S., L.P.C., Behavioral Health Clinician, submitted a letter related to his treatment of claimant at the Muscogee (Creek) Nation Behavioral Health Services (Tr. 483-84). Mr. Keplinger wrote that claimant began receiving treatment with his clinic in May 2006 and receives individual counseling and medication management to treat his depressive disorder, mood disorder, and anxiety disorder (Tr. 483). In addition, Mr. Keplinger stated that claimant has "displayed a range of impairment from moderate to severe[,]" good days are atypical, and claimant's symptoms "have appeared to have led him to extended periods of isolation, a very low energy level, transient interval insomnia, disturbances in appetite, crying spells, poor concentration, family discord, inability to interact socially with others outside of the

home, and a certain degree of apathy as to whether he lives or dies" (Tr. 483). Finally, Mr. Keplinger opined that claimant's symptoms "appear to make it very difficult, if not impossible, for him to manage more than the basic activities of daily living" (Tr. 484).

Mr. Keplinger also completed a Mental Impairment Questionnaire on April 22, 2009, in which he identified claimant's signs and symptoms to consist of poor memory, sleep disturbance, mood disturbance, emotional liability, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, oddities of thought, perception, speech or behavior, social withdrawal or isolation, blunt, flat or inappropriate affect, decreased energy, manic syndrome, generalized persistent anxiety, and hostility and irritability (Tr. 576). He wrote that claimant was compliant with counseling, and that although claimant was "relatively stable," Mr. Keplinger anticipated that claimant would miss work more than three times per month (Tr. 577). With regard to claimant's functional limitations related to his mental health impairments, Mr. Keplinger opined that claimant suffered from marked restrictions in his activities of daily living, extreme restrictions in his ability to maintain social functioning, frequent limitations in concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner, and would experience continual episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (Tr. 578).

On December 18, 2007, Dr. John W. Hickman, Ph.D. performed another consultative examination of claimant.  At that time, claimant reported difficulty with depression which had been unresponsive to medication, and that he has had problems with his memory ever since an assault that rendered him unconscious for three hours and required reconstructive surgery of the right side of his face (Tr. 485).  The claimant was given a Mental Status Exam, where it was noted that he had a blunt affect with a depressed and anxious mood, and the claimant reported that he feels helpless and hopeless, becomes irritable sometimes, has trouble sleeping, experiences racing thoughts, and obsessive ideation about his life (Tr. 487).  Dr. Hickman also administered, *inter alia*, the WAIS-III, the Wide Range Achievement Test – Third Edition, Wechsler Memory Scale-Third Edition, Beck Depression Inventory, and the Minnesota Multiphasic Personality Intentory-2 (Tr. 486).  Ultimately, Dr. Hickman's conclusions were that claimant suffered from mood, anxiety, and math disorder, exhibited features of a histrionic personality disorder, and marked psychosocial stress from financial concerns and social isolation, and assigned to claimant a GAF score of 60 (Tr. 490).  Dr. Hickman then completed a Mental RFC Assessment and found claimant to be moderately limited in his ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to sustain an ordinary routine without special supervision (Tr. 491-92)

The ALJ gave little weight to Mr. Keplinger's opinion about the severity of the claimant's limitations because it was "not supported by any psychological testing and is

based solely on the claimant's subjective complaints" (Tr. 24).  This is an insufficient basis for discounting such "other source" evidence.  First, in rejecting Mr. Keplinger's opinion on that basis, the ALJ ignores that psychological opinions need not be based on objective findings.  *Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("[A] psychological opinion does not need to be based on 'tests;' those findings can be based on 'observed signs and symptoms.'  Dr. Houston's observations of Ms. Wise do constitute specific medical findings."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004), *citing* 20 C.F.R. subpt. P, app. 1 § 12.00(B).

Second, there is no indication that the ALJ properly weighed Mr. Keplinger's opinion in accordance with the factors set out in 20 C.F.R. § 416.927(d).  *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939.  *See also Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that Soc. Sec. Rul. 06-03p "specifies that the factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. § 404.1527(d) and § 416.927(d) apply equally to all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other sources' [and] instructs the adjudicator to explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") [internal quotations omitted].  Those factors are: (i) length of the treatment relationship and the frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) degree to

which the opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the source is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).  The ALJ mentioned the length of the relationship and the frequency of examination, but applied none of the other factors in determining the weight he assigned to Mr. Keplinger's opinion.

It is worth noting here that the ALJ failed to adhere in any meaningful way to the instructions of the Appeals Council in the initial remand.  The Appeals Council directed the ALJ, *inter alia*, to "[g]ive further consideration to the treating and nontreating source opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence."  But the ALJ's discussion of these opinions was essentially the same as his discussion in the initial opinion, *i. e.*, the ALJ failed in large part to discuss the weight he was assigning to these opinions.  The ALJ also failed to even mention the opinion specifically noted by the Appeals Council, *i. e.*, the opinion of Dr. J. Salmon, O.D., Ph.D. that claimant was not to look left and should turn his head instead, or to clarify his fine vision limitation in the claimant's RFC as instructed by the Appeals Council (Tr. 44).  Furthermore, the Appeals Council instructed the ALJ to address the third party testimony of the claimant's mother Evelyn Mooney, who submitted an adult third party function report on his behalf (Tr. 44,

160-68).  The ALJ failed to follow this instruction as well.  *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. (identifying the following factors to apply when evaluating other source opinion evidence from spouses, parents, friends, and neighbors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence).

Because the ALJ failed to properly analyze "other source" evidence in the case, the decision of the Commissioner must be reversed and the case remanded for proper analysis by the ALJ.  On remand, the ALJ should properly re-evaluate the opinion of Mr. Keplinger and any other evidence the Appeals Council instructed him to consider further in the first remand.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine the work he can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma